Elise Graham, Appellee, v. City of Chicago, Appellant.

Gen. No. 34,810.

Heard in the first division of this court for the first district at the December term, 1930. Opinion filed March 23, 1931.

SAMUEL A. ETTELSON, Corporation Counsel, and WILLIAM D. SALTIEL, City Attorney, for appellant; MATILDA FENBERG, Assistant City Attorney, and ROY S. GASKILL, Assistant Corporation Counsel, of counsel.

WALTER J. MILLER and WALTER L. WENGER, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff, while walking on the sidewalk on North Lawndale Avenue near Ohio Street, Chicago, slipped upon an icy place and received severe injuries. Upon trial of her action for damages she had a verdict for $16,000. From the judgment thereon defendant appeals.

The Ryerson School is a public school in the city of Chicago with a playground extending from the school building to the north side of Ohio Street and the west side of Lawndale Avenue. A skating pond was constructed in the playground by erecting a clay embankment and flooding the enclosure with water which would freeze. The side of the embankment nearest Ohio and Lawndale was about a foot or more in height and about five feet from the respective sidewalks on those streets.

January 12, 1926, which was 13 days prior to the date of the accident to plaintiff, this pond was flooded with water by firemen, according to one witness. In flooding the pond the water overflowed across the sidewalk on Lawndale Avenue near Ohio Street and froze, making a strip of ice about two or more feet wide, extending clear across the sidewalk. The accident

happened January 25th at about 11 o'clock at night; the entire sidewalk, including the strip of ice, was covered with a light fall of snow. Apparently, there was no general condition of iciness on the streets or sidewalks. Plaintiff testified that before she stepped on the icy strip "it was nice walking"; that she did not see the ice under the snow, but stepping thereon slipped and fell with resulting injuries.

Defendant asserts that it was not negligent under the rule announced in certain cases to the effect that a city will not be held liable for mere slipperiness of a sidewalk occasioned by ice and snow; that it is liable only where the ice forms hillocks or ridges amounting to an obstruction which the city, after due notice, suffers to continue. *Hobbs v. City of Chicago,* 248 Ill. App. 183, and cases there cited. Defendant also invokes those cases where it has been held immaterial whether the slipperiness is caused by natural or artificial means. *Miklaszewski v. City of Chicago,* 194 Ill. App. 614; *Metzger v. City of Chicago,* 103 Ill. App. 605; *Mareck v. City of Chicago,* 89 Ill. App. 358.

In answer plaintiff presents the case of *King v. Swanson,* 216 Ill. App. 294, where it was held that the use made of the sidewalk by the defendant, who operated a laundry next to the sidewalk, rendered it unsafe and therefore he was responsible. This case was followed by *Loyd v. City of East St. Louis,* 235 Ill. App. 353, where a judgment against the city was affirmed on the ground that the slippery condition of the sidewalk was caused by the adjacent property owner, which condition the City of East St. Louis failed to abate, although having ample opportunity to do so. This case cited *City of Muncie v. Hey,* 164 Ind. 570, where it was held that, although the walks in the other parts of the city were slippery, the accident took place on ice negligently allowed to accumulate on the sidewalk. In *Hubbard v. City of Wood River,*

244 Ill. App. 414, the judgment against defendant was affirmed on the ground that the slippery walk was caused by water flowing from a leaking pipe which had frozen and which condition the defendant had permitted to remain. In discussing the claim that a city cannot be held liable for mere slipperiness of its walks and only when the ice or snow is in ridges forming an obstruction, the opinion said:

"It is difficult to perceive the ground for such a distinction. Of course, the distinction is based on the rule that there is no liability in case of slippery walks caused by freezing rain, but why should that rule apply? The conductor pipe casting water onto the walk where it will freeze must, of necessity, render the walk defective, and it can make no difference in the liability of the municipality whether, at the particular time, the ice is smooth or rough. 58 L. R. A. 324. The liability of a city for injuries resulting from the accumulation of ice upon a sidewalk is not confined to the cases where the ice is in hills or ridges. A city may be liable for an accident caused by reason of the slippery condition of its streets caused by the negligence of its officials, even where the ice and snow do not form into hills and ridges. *Holbert v. City of Philadelphia,* 221 Pa. 266, 70 Atl. 746; *Magaha v. Hagerstown,* 95 Md. 62, 51 Atl. 832; *Boyland v. City of Parkersburg,* 78 W. Va. 749, 90 S. E. 347." See also 13 A. L. R. 37; *Reedy v. St. Louis Brewing Ass'n,* 161 Mo. 523.

These latter cases announce the rule applicable to the instant case. Here, the liability of defendant is predicated upon the affirmative act of the defendant through its agents in causing the overflow of the skating pond so as to cause an icy strip across the sidewalk. Manifestly, the situation does not come within the rule that the city will not be liable for icy and slippery conditions which are general. Here, the slip-

pery condition was occasioned by the careless manner in which the skating pond was flooded across the sidewalk. Under such circumstances the city must be held responsible.

The jury could properly find that plaintiff was not guilty of contributory negligence. She had no difficulty in walking on the sidewalk before she stepped on this icy strip, and the light snow which covered it and the rest of the sidewalk concealed it from her sight. She had no reason to suspect its presence before she stepped on it. A pedestrian is not obliged to keep his eyes glued to a sidewalk, but may assume that it is in a reasonably safe condition. *City of Chicago v. Babcock,* 143 Ill. 358.

Defendant next argues that plaintiff failed to prove the contents of the statutory notice served upon it. The notice contained the statement that the attending physician was "Dr. Edwin Brucker, 4100 W. Madison Street, Chicago, Illinois." When plaintiff fell some of the neighbors took her home and a doctor was called, but his name was not given by any witness, although they all agree that this doctor gave her only first aid. Plaintiff the next day was taken to the County Hospital and while there she was under the care of a Dr. Steinberg and a Dr. Kronenberg. Defendant argues that plaintiff, having named Dr. Brucker as the attending physician in her notice, has failed to prove the case made in her declaration, citing *Hamilton Co. v. Channell Chemical Co.,* 327 Ill. 362, where it was held that there could be no recovery upon a declaration for not accepting goods where the proof shows that the goods were not manufactured or tendered to the buyer. This is manifestly not applicable to the instant case. In *Frey v. City of Chicago,* 330 Ill. 640, whether the plaintiff's place of residence and the physician's address were correctly given in the notice, were controverted questions of fact, to determine which evidence was necessary.

Here, there was no controversy as to anything contained in the notice nor as to the extent of plaintiff's injuries nor the medical treatment given her. At most there was a variance between the statement in the notice as to the attending physician and the evidence. Defendant did not raise the point upon the trial. Under such circumstances the rule is that, not having raised the point in the trial court, it is too late to raise it upon review; that advantage may be taken of a variance upon appeal, it must appear that it was specifically pointed out in the trial court. *City of Waukegan v. Sharafinski,* 135 Ill. App. 436; *Chicago, B. & Q. R. Co. v. Dickson,* 143 Ill. 368.

If defendant had made the point upon the trial, slight evidence undoubtedly could have shown the connection of Dr. Brucker with the case. The name of this doctor also appears in the police report made when plaintiff was removed to the County Hospital. It is a reasonable inference that Dr. Brucker, whose name was inadvertently not given upon the trial, was the first doctor who saw plaintiff, but, had attention been called to this upon the trial, this undoubtedly could have been cleared up.

There is no reversible error in the record and the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.